Good morning. Good morning, Judge Hugg. Good morning, Your Honor. May it please the Court, Thomas Flappin on behalf of the petitioner Tihun Fanteye-Desta. This is on petition for review of a decision from the immigration judge and a B.A. denying a request for asylum, withholding, and convention against torture relief, as well as we're here on a motion asking this Court to stay the order of voluntary departure non-pro-tunct to the originally filing of his petition for review. We have submitted briefs on the issue of asylum and a brief in support of our motion for the stay of the voluntary departure period. If it please the Court, I would like to limit my comments here this morning on the voluntary departure issue, as we believe that the claim for asylum has been adequately briefed and we submit on the brief. As far as the voluntary departure issue, we move this Court for an order staying that voluntary departure period non-pro-tunct to February 3rd, 2003, the date of filing of the original petition for review before this Court. We ask this pursuant to the Court's equitable jurisdiction and in keeping with the Court's recent decisions as we have cited them, Al-Hemry v. Ashcroft, in which the Court ruled that it could use its equitable jurisdiction to stay the period of voluntary departure pending the resolution of the petition for review from the I.J. or the B.I.A.'s denial of asylum, withholding, or convention against torture relief. The question here is, is this is a late filing. The Respondent or the Petitioner did not file this day originally when he filed this day for deportation. At the time he filed his request for a stay of deportation, if we granted the stay of deportation and if he had filed a request for a stay of voluntary departure, would he have been granted that automatically if we grant the stay of deportation? At the time he filed, Your Honor, I believe it was an unsettled question in the legal community. And as this Court pointed out, in a finding or a holding just about a month after he filed his petition for stay and for the review, I believe the case has been cited as Azueta Carrillo. In that decision, the Court held that it was not automatically stayed by the filing of the motion. No, I guess I missed, you're responding accurately to my question and I asked it incorrectly. If he satisfied the criteria for a stay of deportation, would he have necessarily satisfied the criteria for a stay of voluntary departure? I believe after a review of the El Hemry case and the Court's arguments therein, I believe he would have. It's the same criteria. He has to show that he has a claim, that he will succeed on the underlying claim, and that irreparable harm. As far as irreparable harm, Your Honor, voluntary departure is an important form of relief for aliens because it allows them to leave the country without a deportation order and without any bar of returning for a period of 5, 10, 20 years or life. What's important to point out here is that both the BIA and the IJ granted the petitioner and then the respondent voluntary departure, and that he did not depart the country because he filed his stay. And this Court has pointed out that even though this Court does not lose jurisdiction if he were to return to his home country, to return to it from which he fears while the justice system is in place, as slowly, as some have pointed out, by the courts in the U.S., it appears that if a person did not leave voluntarily under the law, he loses the right for many forms of relief, including adjustment of status, and he also is subject to civil penalties. What's important to note is that recently the respondent has been married to a U.S. citizen and has a United States citizen child. So adjustment of status would have been available to him had he been within the time period of voluntary departure. So that is irreparable harm, because statutorily, he is barred for at least 10 years from seeking adjustment of status for failing to depart during the period granted by the BIA. And also, we understand that this request is coming about a year later or actually about nine months after his filing. However, it wasn't until two recent cases from this circuit and the most recently, the El Hemry case, that pointed out that this court retained equitable jurisdiction to stay that period, which is why we asked the court in its jurisdiction to stay the period non-protunct to allow the petitioner the ability to voluntarily depart if he is not successful on his underlying petition for review. Now, I know the rule in the First Circuit is, even aside from equitable power, the First Circuit simply says that that circuit has the power, and they don't even call it non-protunct. They have the power to reinstate voluntary departure. Are there any other circuits that have ruled on this question yet? Your Honor, I have to admit I'm not positive. I do know that for a long time, the question was, it was a question that was bandied about by the legal community. What exactly was the court's jurisdiction on voluntary departure? Because it's an important form of relief, and very importantly, recently, with the increased caseload here at the Ninth Circuit because of some of the situations with the BIA, these petitions are taking longer and longer. And as the court knows, the statutory period for which the voluntary departure is granted is a very short period of time. It's 60 days post-conclusion, and the BIA usually grants it for 30 days. So it's a very short window for the petitioner to either pack his bags and leave or file the petition. Now, assume we've got a BIA decision and a grant by the BIA of 30 days of voluntary departure. Is the petitioner who comes to us seeking review on the merits entitled to come to us, say, on day 25 asking for a stay of voluntary departure? That's not a problem. We can extend that, can't we? Assuming he comes to us before the expiration of the 30 days? I believe as long as the petition is filed and this court stays the period, there's no question that the voluntary departure can be stayed for an indefinite period of time. And that we have the power to stay it? Absolutely. As does the BIA. A filing of an appeal from the IJ's decision to the BIA automatically stays that voluntary departure, sometimes for years. And the filing of the petition for review to us of the BIA decision, that does not automatically stay the voluntary departure period? That's a question I don't believe has actually been answered concretely. But it sounds as though the government's position is that the petitioner has to make not only file a petition for review, but make a separate motion for staying the voluntary departure? I would say that in keeping with the recent decision in the Alhambra case, it would be that the petitioner may be on notice now to file the stay immediately because there is some jurisprudence. Prior to that, there really wasn't an answer to that question. So I don't believe that by not filing the petitioner has divested this court of its jurisdiction or prejudiced himself. And also I think it's in the interest of justice that this court grant that stay to allow the voluntary departure. Partly I'm trying to figure out the practicality of if the petitioner needs to file a separate piece of paper asking for a stay of voluntary departure, whether it's just one more darn piece of paper. I would agree. I would agree with the court that the filing of the petition for the granted voluntary departure for that period, and that this court could then at the end of the proceedings, if the court denied the petitioner's petition for any number of reasons, could still institute or grant a 30-day or 60-day voluntary departure window period. As long as that period, I believe, did not extend past the jurisdictional constraints of the Immigration and Nationality Act. Okay. I'll go. I'm sorry. Wouldn't that wipe out the 30-days limitation in every case, whether it was meritorious or not? I don't believe so, Your Honor. It's the same as when the IJ grants a person post-conclusion voluntary departure for 60 days, as is the maximum mandated by statute. At that time, that person takes an appeal to the Board of Immigration Appeals. It automatically stays that period. And in some cases, the BIA appeals are there for four, five, or six years. It's an administrative situation. It's not through any fault of the respondent, the petitioner. And it doesn't wipe out the period. And there's nothing, I believe, in the Act or any other jurisprudence I can find that says... But that's a situation where they acted within the 60 days. It's actually 30 days of the BIA as well. Yes. And in this case, they would have that. Normally, yes, my client's petition did not act within the 30 days. However, at the time, there was a question of what the law was. Immediately after this Court's decision in the Al-Hemry case describing this Court's equitable jurisdiction to stay, a petition was filed. And we're asking this, which is why we're asking that it be non-pro-tongue. To preserve this very important form of relief to the respondent or to the petitioner to avoid the irreparable harm he would and does appear to. He's married to a U.S. citizen. He has a U.S. citizen child. If he does not have the opportunity to voluntarily depart or to apply for adjustment of status, he will suffer irreparable injury. Excuse me. Using the example that Judge Fletcher has said where the petition is filed just five days before the 30 days runs, and if it stayed, does it mean that it has just stayed for five more days or does it mean it stayed for the full 30? I believe it stayed for the entire duration of the petition's life before this Court. The important thing is the petitioner has 30 days to make a decision whether he wants to take a petition to this Court. There are many factors may go into that, monetary factors, questions about what his legal rights are. He needs time to contact an attorney in many cases. So he needs time to, and that 30 days gives him an opportunity. As long as he files it within that period, I believe it should stay continuously throughout the life of this petition. Okay. This is a complicated enough matter. You've run over your time by a few seconds. I think we'd like to give you a minute or so in rebuttal, but let's hear from the government. Thank you. Ms. Farrier, we saw you yesterday in courtroom two. I hope you're having a nice week in San Francisco. Yes. It's very hurried, but it's nice. Again, my name is Cindy Farrier and I represent the Attorney General in this matter. Petitioners, counsel, didn't choose to talk about the merits at all of the case. However, I would like to refer to them at least briefly for the Court. Again, the standard that this Court obviously applies is whether the evidence in the case compels the conclusion that any reasonable facts finder must find the requisite fear of persecution. In this case, I think it's fairly clear from the record that the petitioner didn't satisfy those standards or doesn't compel that conclusion. Because his testimony and his evidence was not credible. There were many material misrepresentations, inconsistencies, and implausibilities that were cited by the immigration judge in his decision. First, he cites to, or not first, but he does cite to the... You know, I hesitate to interrupt, and certainly my colleagues can ask questions on the merits if they like. Okay. But I'm more interested in the small but technical and, in the end, important question of voluntary departure. Could you lay out your position in response to what you just heard? Our position is that even under the El Hemry case, that the petitioner wouldn't be allowed, in this case, in order to get that extension of voluntary departure, because it wasn't requested prior to the expiration of that period. And I guess in the El Hemry case, I mean, I think that it even left open that it didn't decide the question of if it had expired. Let me start by asking the question I asked the other side, and that is, I know the First Circuit allows for what we've been calling, at least sometimes today, non-protunct stay of voluntary departure. They don't even call it stay of voluntary departure. They just reinstate it. Has any other circuit yet ruled on the question? I am not certain. So it's one on one side, and that's it so far? As far as I know, I am not aware of any other cases. You would also ask whether it would be necessary for a petitioner to always file a separate motion for voluntary departure, or if they could just incorporate that into their request for a stay. I think that, practically speaking, the request would need to be separate. Potentially, I guess it could be included in the same motion as the stay motion. But it would necessarily need to be distinct, because there are instances in which an alien may not have been granted voluntary departure. But in a circumstance where an alien has been granted voluntary departure, and the alien is seeking stay of deportation pending the resolution of the this court, are the standards or are the criteria the same for granting stay of deportation and granting stay of voluntary departure? I think that this court has found that. Yeah, that's my sense, that they really are the same. So if they come in and they get stay of deportation, that necessarily means that they've satisfied the criteria, save possibly in a case like this one, where the government didn't oppose the stay of deportation. That is to say, you didn't oppose, and I think then it turned out automatic. But is it very likely that the government would react differently to a motion for stay of deportation compared to a motion that has both stay of deportation and stay of voluntary departure? I am not certain exactly what, how we're interpreting all of those, I guess, in a majority of cases. I think that the government would certainly reserve the, would like to have the opportunity to oppose such a request in certain circumstances. I think that it could, for it to be automatic would be problematic, because there may be instances where... That is to say, automatic once the stay of deportation is entered. Yes, I think that the reason that it could be problematic is there may be that the petitioner is trying to preserve a certain form of relief, such as this petitioner who is now attempting to petition for an entirely, or apply for an entirely different form of relief that's only become available after his proceedings have begun. Would it be a problem if, let me see, this is, how do I express this as cleanly and easily as I can? If we were to hold with the First Circuit that we have the power afterwards, or not retroactively, to grant, or I should say to reinstate, a voluntary departure, that doesn't necessarily mean, that only means that we would have the power to do so. It wouldn't mean that the government could not say, you know, we recognize, Judge, you have the panel, you have the power to reinstate it, but for the following reasons you shouldn't.  Would that be an unworkable or objectionable way to have that system be set up? Well, I can't think of anything offhand that speaks against that specifically, but I do think that, again, the government wouldn't want such a system to be automatic, if that's what you're... Well, I'm not after automatic, I'm after saying, what if the panel has the power to reinstate a voluntary departure? Not automatic, we have the power to do so, and you have the ability to say, no, you shouldn't reinstate it, and here are the reasons why. So, you have the power to say, just as you would have had the power when you made the initial motion, although now you're making it to the panel that actually has the case in front of it, rather than back at the motion stage where it's within 30 days of the petition and it's going downstairs to the staff attorneys. Well, I think that the government's position is certainly that it's a question that should be considered by the panel rather than at a motion stage, I guess. So, if you found that you did have the power to do so, then I think that, again, that the government would, as long as we had the opportunity to object at a certain point, then that may be a workable solution, but, again, I'm speaking with... I should only be speaking with regard to this particular case, and so, with regard to this case, I think that it is important that the government, or that the court consider the fact that L. Henry was fashioned in a way so that it was providing equitable, or noting that it had equitable power to grant this stay for voluntary departure, or stay of voluntary departure. And I think in this case, it's not necessarily... It's not a necessary thing for the court to do. The court doesn't necessarily have to grant it for equitable reasons, because, again, as I mentioned, it was applied for after the period had expired. One thing that does pertain to the equity situation is that, at that time, it was uncertain what the Contreras-Aragon case, whether it was still good law, or whether the legislature had, or the Congress had overruled it. Yes, that is true. But I think that the other equities mentioned by Petitioner in support of the stay, such that he is still eligible for other relief, isn't necessarily compelling in this case, in the sense that he came in claiming asylum, and yet it appears as though his claim, or the immigration judge found his claim to be not credible. And it's only been since time that he's accrued here that he's been able to now be eligible for another relief, that is marriage to a U.S. citizen and birth of a U.S. child. But are there any questions about the merits or any of the findings on that? One thing that concerns me is the seeming unfairness of an alien having to select whether to appeal the case to our court or voluntarily to depart, which would, of course, give him the right to come back and so forth and set aside. It just seems like it places a real handicap on the person who wishes to appeal a meritorious case. Well, I think that Congress's intent was voluntary departure was intended almost as a form of relief, in that it is giving these persons an opportunity to choose whether to go forward with a case or whether to depart as a separate option. And I think in order to make it compelling, there are some reasons to leave it that way, if that makes sense to you. There are some reasons, I think, to have a little bit of, I guess, to have some consequence for failing to depart as ordered by the board. Also consequences for appealing what would be a possible meritorious position. Yes, I think that's true. That doesn't seem to correspond with what we usually think of in terms of the right to appeal. Well, the right to appeal is still certainly there. It's just you choosing not to comply with the other voluntary order, which you accepted at the very beginning of proceedings with the immigration judge. So, if there are no further questions. Okay. Thank you very much for your argument. Would you like a minute in rebuttal? Just a moment here. If I may, Your Honor. Simply in rebuttal, after hearing the comments from opposing counsel on the Court's questions, I would agree that making a petitioner or a respondent, an alien, choose between appealing and voluntarily departing in that 30-day period, without granting them an automatic stay when they file a petition, would chill the respondent's right to appeal. Making them choose within a 30-day period, even if they filed a day or so after the initial BIA decision was received, there may still not be a decision from this Court possibly on whether or not that was stayed if the government is given an opportunity to argue on the stay of the voluntary departure period. Therefore, a petitioner would be forced to choose between leaving and giving up his right to appeal or appealing. And I don't believe that is the statutory intent of the act or the voluntary departure period. They are allowed to depart after conclusion of the proceedings. Okay. Thank you. Thank you very much. Thank you, both counsel. The case of Desta v. Ashcroft is now submitted for decision.
judges: Hug, Alarcon, W. Fletcher